IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NASHANDA WATSON, *et al.*

Plaintiffs,

CIVIL ACTION FILE NO.
1:13-CV-03049-JEJ

v.

MR. G'S ENTERTAINMENT, INC.
d/b/a CLUB 22, *et al.*

Defendants.

## SETTLEMENT AGREEMENT AND RELEASE

**1.    INTRODUCTION.**

1.1.    This Settlement Agreement ("Agreement") is voluntarily made and entered into by and between the Named Plaintiffs, on behalf of themselves and the Represented Opt-In Plaintiffs described below (collectively, "Plaintiffs"), and Defendants Mr. G's Entertainment, Inc., Gary Dobrinoff and Christopher Danilshenko (collectively, "Defendants"). The Agreement is conditioned on the Court's approval.

**2.    DEFINITIONS.**

As used in this Settlement Agreement and the attached exhibits, the following words and phrases shall have the following meanings:

2.1    "Administrative Costs" means all administrative costs of settlement, including, but not limited to assessing the appropriate Settlement Payment to pay

to each Participating Plaintiff, mailing and collection of the Notice and Release Forms, settlement distribution, and any other reasonable fees and costs incurred by Plaintiffs' Counsel in connection with the execution of their duties as Settlement Administrator under this Agreement.

2.2    "Agreement" means this Settlement Agreement, with exhibits.

2.3    "Approval Hearing" means any future hearing to be held by the Court, if one is deemed necessary, to consider whether to issue an order of Final Approval of the Settlement.

2.4    "Attorneys' Fees" means the amount of money that Plaintiffs' Counsel receive from the Gross Settlement Fund through an Order of the Court to compensate them for their work in this Action.

2.5    "Claims alleged in this lawsuit" shall mean the causes of action alleged in the Second Amended Complaint—specifically, (1) failure to pay minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, *et seq*.; (2) failure to pay overtime under the FLSA, 29 U.S.C. § 207; and (3) failure to pay wages under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment Collection Act.

2.6    "Client Trust Account" shall mean the escrow/trust account held by Schulten Ward Turner & Weiss, LLP.

2.7    "Club 22" shall mean the adult entertainment club located at 3920

2

Jonestown Road, Harrisburg, PA 17109.

2.8    "Contingency Fund" shall mean the sum of one thousand ($1,000) made available from the Gross Settlement Amount and held in trust by Plaintiffs' Counsel through the date specified in Section 7.2.1.1.1 below.

2.9    "Court" means the United States District Court for the Middle District of Pennsylvania.

2.10    "Defendants" shall mean Gary Dobrinoff, Christopher W. Danilshenko and Mr. G's Entertainment, Inc. d/b/a Club 22.

2.11    "Defendants' Counsel" shall mean the law firm of Cunningham, Chernicoff & Warshawsky, P.C. and Defendants' attorneys of record from that firm.

2.12    "Final Approval" means formal and written approval of this Agreement by the Court.

2.13    "Gross Settlement Amount" shall mean the sum of three hundred fifty thousand dollars ($350,000).

2.14    "Litigation Expenses" includes any expenses incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of this Action and/or in the Pending Proceedings, including all Court-approved litigation costs.  The costs associated with settlement administration are not included in this definition and are separately defined above in Section 2.1.

3

2.15  "Named Plaintiff" shall mean any one of Nashanda Watson, Jacquelene Carter, Talya Blackwell-Young or Alexis Harr.

2.16  "Named Plaintiff Claim Form" shall be the form distributed to the Named Plaintiffs and which they shall be required to return in a timely manner in order to accept this settlement.  A template of the Parties' agreed upon Named Plaintiff Claim Form is attached as Exhibit B to this Agreement.

2.17  "Named Plaintiff Notice and Release" shall mean the Notice and Release Form distributed to the Named Plaintiffs to inform them of this settlement and their options to accept or reject this settlement.  A template of the Parties' agreed upon Named Plaintiff Notice and Release is attached as Exhibit A to this Agreement.

2.18  "Opt-In Plaintiff" shall mean any individual who has opted into this action by filing, through Plaintiffs' Counsel, a consent form with the Court and who has not since been dismissed from this action.

2.19  "Opt-In Plaintiff Claim Form" shall be the form distributed to the Represented Opt-In Plaintiffs and which they shall be required to return in a timely manner in order to accept this settlement.  A template of the Parties' agreed upon Opt-In Plaintiff Claim Form is attached as Exhibit D to this Agreement.

2.20  "Opt-In Plaintiff Notice and Release" shall mean the Notice and Release Form distributed to the Represented Opt-In Plaintiffs to inform them of

4

this settlement and their options to accept or reject this settlement. A template of the Parties' agreed upon Opt-In Plaintiff Notice and Release is attached as Exhibit C to this Agreement.

2.21 "Participating Plaintiff" shall mean (1) any Named Plaintiff that accepts this Settlement by submitting a valid and timely Named Plaintiff Claim Form as described in Section 10.7; or (2) any Opt-In Plaintiff that accepts this Settlement by submitting a valid and timely Opt-In Plaintiff Claim Form as described in Section 10.7.

2.22 "Parties" shall mean Plaintiffs and Defendants.

2.23 "Plaintiff" shall mean any Named Plaintiff or Represented Opt-In Plaintiff.

2.24 "Plaintiffs' Counsel" means the law firms of Schulten Ward Turner & Weiss, LLP and Serratelli, Schiffman & Brown, PC, and the attorneys listed as Plaintiffs' Counsel on the Second Amended and Supplemental Complaint.

2.25 "Represented Opt-In Plaintiff" shall mean any Opt-In Plaintiff.

2.26 "Settlement" means the compromise and settlement embodied in this Agreement.

2.27 "Settlement Fund" means the maximum of three hundred forty-nine thousand dollars ($349,000) made available pursuant to the terms of this Agreement to pay Participating Plaintiffs, and to pay Litigation Expenses,

5

Administrative Costs, and Plaintiffs' Counsel's Attorneys' Fees.

2.28    "Total Settlement Payment" means the amount of money calculated to be paid pursuant to the terms of this Agreement to each Participating Plaintiff.

2.29    "Unresponsive Plaintiff" shall mean any Named Plaintiff or Opt-in Plaintiff that neither rejects nor accepts this settlement in the timeframe and manner set forth in Section 10.7.

## 3.    **BACKGROUND.**

3.1.    On December 18, 2013, the Named Plaintiffs, on behalf of themselves and those similarly situated, filed this lawsuit against Defendants. The lawsuit is *Nashanda Watson, et al. v. Mr. G's Entertainment, Inc., et al.,* Civil Action File No. 1:13-CV-3049-JEJ and is pending is the United States District Court for the Middle District of Pennsylvania before the Honorable John E. Jones, III.

3.2.    The lawsuit alleges that Defendants misclassified Plaintiffs—current and former entertainers who worked at Club 22 in Harrisburg, Pennsylvania as independent contractors. The lawsuit further alleges that the entertainers are employees under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"). The lawsuit alleged that Defendants failed to pay entertainers wages compliant with the FLSA and PMWA, and charged them fees to work in further violation of the FLSA and PMWA. Defendants have denied all of these allegations.

3.3.    The lawsuit was brought as a collective action under the FLSA.  On November 10, 2014, the Court granted Plaintiffs' Motion for Conditional Certification, certifying a collective of current and former entertainers who worked at Club 22.  There are presently 22 Opt-In Plaintiffs in this action.

3.4.    Plaintiffs and Defendants have each calculated damages based on relevant discovery produced during the litigation and based on their respective clients' estimates and knowledge of the matters at hand.

3.5.    On May 5, 2016, the parties participated in a Court-facilitated settlement conference hosted by the Honorable Chief Magistrate Judge Martin Carlson whereupon a tentative settlement agreement was reached.

3.6.    **NOW THEREFORE,** in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, it is hereby agreed, by and among the undersigned Parties, as follows:

4.    **JURISDICTION.**

4.1.    If this Agreement is approved by the Court, the Court will retain jurisdiction of this lawsuit for the purpose of interpreting, implementing, and enforcing the Agreement consistent with the terms discussed herein.

5.    **FAIR AND REASONABLE SETTLEMENT.**

5.1.    Plaintiffs believe that the claims asserted in the lawsuit have merit and

that the evidence developed to date support their claims.  However, Plaintiffs and Defendants recognize the expense and length of continued proceedings necessary to prosecute the lawsuit through trial and through appeals.  Plaintiffs and Defendants have taken into account the uncertain outcome and risk of continued litigation related to damages, as well as the difficulties, delays, and risks of collection inherent in such litigation.

5.2.    The Parties, together, believe that this Agreement confers substantial benefits upon Plaintiffs.

5.3.    The Parties, together, believe that this Agreement is fair, reasonable, and adequate and Plaintiffs' Counsel believes it is in the best interests of Plaintiffs.

5.4.    Defendants, by executing this Settlement Agreement do not admit they ever employed the Plaintiffs or are liable to the Plaintiffs for violations of the FLSA or the Pennsylvania Minimum Wage Act; or the Pennsylvania Wage Payment Collection Act.

## 6.    __PLAINTIFFS INCLUDED IN THIS SETTLEMENT.__

6.1.    This Agreement covers all Named and Represented Opt-in Plaintiffs, as defined above.

6.2.    All Named and Represented Opt-in Plaintiffs shall have the right to accept or reject this Settlement through the notice process described below.

7.    **SETTLEMENT AMOUNT.**

7.1.    The Gross Settlement Amount is three hundred fifty thousand dollars ($350,000), which shall be paid by Defendants as specified in Section 8.

7.2.    The Gross Settlement Amount shall be allocated as follows:

7.2.1. Settlement Fund:    A maximum of three hundred forty-nine thousand dollars ($349,000) will be made available by Defendants to provide cash compensation to Plaintiffs and to pay Plaintiffs' Counsel's Litigation Expenses, Administrative Costs, Named Plaintiff incentive awards and Plaintiffs' Counsel's  Attorneys' Fees, as provided for herein.  The sum of the Settlement Fund remaining after subtracting the amount of any awarded Litigation Costs, Administrative Costs, Named Plaintiff incentive awards and Plaintiffs' Counsel's Attorneys' Fees shall be distributed to Plaintiffs as set forth in Section 13.2 below.

7.2.2. Contingency Fund: A maximum of one thousand dollars ($1,000) will be made available by Defendants to provide for contingency costs associated with administration of the Settlement Fund.  Money in the Contingency Fund will be held in a trust by Plaintiffs' Counsel until April 16th of the year following the last payment discussed in Section 13.  Any money remaining in the Contingency Fund after that date will be distributed among the Participating Plaintiffs in proportion to their

9

amount of the Total Settlement Payment.

**8.    PAYMENT SCHEDULE.**

8.1.    On or before July 31, 2016, Defendants shall deposit seventy thousand dollars ($70,000) into the Client Trust Account held by Plaintiffs' Counsel.  Upon execution of this Agreement, Plaintiffs' Counsel shall notify Defendants' Counsel of the name of the financial institution, the account number and the routing number of the account into which the settlement proceeds are to be deposited, wired or transferred.

8.2.    On or before January 31, 2017, Defendants shall deposit a second payment of thirty thousand dollars ($30,000) into the Client Trust Account.

8.3.    On or before July 31, 2018, Defendants shall deposit a third and final payment of two hundred fifty thousand dollars ($250,000) into the Client Trust Account.

**9.    SECURITY FOR GROSS SETTLEMENT AMOUNT.**

9.1.    In addition to the payments described in Section 8 above, Defendant, Gary L. Dobrinoff, shall sign a judgment promissory note for the benefit of the Plaintiffs which is secured by a mortgage to be recorded against certain tracts of land owned by Defendant Gary L. Dobrinoff, and which shall be a first lien on tracts identified more specifically in Exhibits E and F to this Agreement.  A sample of the judgment promissory note is attached hereto as Exhibit G.

10

9.2.    In the event Defendants fail to make any of their scheduled payments as described above and do not cure the deficiency within 10 calendar days of Defendants' Counsel receiving written notice of the deficiency Defendants shall be in default of the Settlement Agreement, provided, however, if Defendants at the time of receiving written notice of default have a signed Purchase and Sales Agreement for the Property set forth in Exhibit E and F, then Defendants shall have One Hundred Fifty (150) days to complete the sale without being in default of the Settlement Agreement.  Plaintiffs upon Defendants' default shall have the right to file a Certification of Default with the Court which shall then issue a judgment of record.  Plaintiffs shall then have the right to proceed to execute upon the mortgaged property.  The lien entered by the Court shall relate to the mortgages described in Paragraph 9.1.  In the alternative the Plaintiffs' shall have the right to commence an action to foreclose on the mortgages.

9.3.    In the event Defendants fulfill their payment obligations as set forth in Section 8, *supra*, Plaintiffs' Counsel shall, within five (5) business days of the final payment by Defendants, cause the recorded mortgage on the property owned by Gary L. Dobrinoff to be satisfied  of record.

## 10.    <u>NOTICE AND RELEASE.</u>

10.1.  Exhibit A to this Agreement is the template for the Named Plaintiff Notice and Release.

10.2.  Exhibit B to this Agreement is the template for the Named Plaintiff Claim Form.

10.3.  Exhibit C to this Agreement is the template for the Opt-In Plaintiff Notice and Release.

10.4.  Exhibit D to this Agreement is the template for the Opt-In Plaintiff Claim Form.

10.5.  Plaintiffs' Counsel shall fill in each Plaintiff's name and amount of her Total Settlement Payment on the applicable Notice and Release and Claim Form.

10.6.  Plaintiffs' Counsel shall mail the Notice and Release and Claim Forms to Plaintiffs within five (5) business days of this Agreement being executed by Defendants.

10.7.  Plaintiffs shall have fifty (50) days from the date the Notice and Release and Claim Forms are mailed to either accept or reject the Settlement.  To accept the Settlement, a Plaintiff must submit a signed Claim Form and Form W-9 to Plaintiffs' Counsel, and Plaintiffs' Counsel must receive the signed Claim Form and Form W-9 on or before the fifty (50) day deadline.   To reject the settlement, a Plaintiff must notify Plaintiffs' Counsel, in writing and as specified in Exhibits A and C, she wishes to reject the Settlement.  Plaintiffs' Counsel must receive the written notification on or before the fifty (50) day deadline.

10.8.  Plaintiffs' Counsel will provide Defendants' Counsel a copy of all timely submitted and valid Claim Forms and rejection notifications within five (5) business days of receiving them.

10.9.  The Parties will attach as an Exhibit all timely submitted and valid Claim Forms and rejection notifications to the Court at the same time that they submit their Joint Motion for Settlement Approval, as specified in Section 18.

10.10. Each Named Plaintiff who accepts this Settlement will agree to a full release of any and all claims she may have against Defendants as of the date she signs the Named Plaintiff Claim Form.

10.11. Defendants agree to a full release of any and all claims they may have against any Named Plaintiff who accepts this Settlement as of the date the Named Plaintiff signs the Named Plaintiff Claim Form.

10.12. Each Represented Opt-in Plaintiff who accepts this Settlement will agree to release her claims alleged in this lawsuit.

10.13. Any Plaintiff who affirmatively rejects this Settlement by submitting a written notification as specified in Exhibits A and C will have her claims alleged in this lawsuit dismissed without prejudice. The final scheduled payment of $250,000 from Defendants shall be reduced by the amount of Total Settlement Payments allocated to those rejecting Plaintiffs.

10.14. Any Plaintiff who neither accepts nor rejects this settlement shall have

her claims alleged in this lawsuit dismissed without prejudice. The amount of Total Settlement Payments allocated to Unresponsive Plaintiffs shall reduce the final scheduled payment of $250,000.00 to be paid by the Defendants.

11.    **RIGHT TO REVOKE AGREEMENT.**

11.1. *Consequences of Non-Approval by the Court:* In the event this Settlement Agreement does not receive Approval by the Court, the Parties shall request the Court to restore them to their respective positions in the lawsuit as of May 5, 2016. In such event, the terms and provisions of this Agreement shall have no further force or effect with respect to the Parties, any order or judgment entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and all Settlement Funds paid by Defendants under this Agreement shall be immediately returned by Plaintiffs to Defendants.

11.2. *Consequences of Default by Defendants:* In the event Defendants default in making the payments set forth in Section 8, Plaintiffs shall have the option to retain the monies paid by Defendants to the date of the default and pursue the foreclosure of the mortgages given by Gary L. Dobrinoff to the Properties set forth in Exhibit E and F to this Settlement Agreement and in the event of a judgment deficiency, then pursue a deficiency judgment action for monies that may still be owing after selling the mortgaged properties; or, file a Certificate of Default, immediately pay back to Defendant all monies received by Plaintiffs prior

to Defendants' default and Parties shall file a joint motion requesting the Court to restore them to their respective positions in the lawsuit as of May 5, 2016.

11.3. *Effect of Non-Approval or Default Under Settlement Agreement:* In the event the Court does not approve this Settlement Agreement or Defendants default in their performance of this Settlement Agreement, if Plaintiffs choose to be placed back into the position the parties occupied on May 5, 2016, then in that event the provisions this Settlement Agreement shall have no further force or effect with respect to the parties.

## 12.   **CONFIDENTIALITY/NON-DISCLOSURE.**

12.1. The Parties understand and agree that in order for Defendants to obtain binding releases from Plaintiffs, the Court must approve this Agreement. The Parties also understand that the Court may require a copy of this Agreement to be filed in the docket of the civil action, making confidentiality of the terms of this Agreement impossible.

12.2. Regardless of whether this Agreement is filed in the public record, each Plaintiff who accepts this Settlement and Plaintiffs' counsel agrees to refrain from contacting any news media outlet for the purpose of advertising, marketing, publishing, or issuing press releases about the terms of this Settlement and making any statements about the case on social media such as Face Book, Twitter, or any other social media platform or forums.  Each Plaintiff also agrees not to disclose

15

the terms of this Agreement to anyone other than their counsel, their spouse, or their tax preparer.

12.3. In the event that the news media contacts any Plaintiff who has accepted this settlement, the Plaintiff will not discuss or comment on the terms of settlement other than to state that "this matter has been settled" or "no comment."

12.4. The named Plaintiffs and Opt-In Plaintiffs are advised that the Defendants, in settling this case, have placed a high value on the Named Plaintiffs' and Opt-In Plaintiffs' strict adherence to the terms of this clause. In the event Named Plaintiffs or Opt-In Plaintiffs are found by the Court, after a hearing, to have violated the terms of this clause, they are advised that one remedy Defendants will seek and that may be imposed by the Court, is either the return of monies Plaintiffs have been paid and/or a forfeiture of money the offending Plaintiff is scheduled to be paid under this Settlement Agreement.

## 13.   **SETTLEMENT ADMINISTRATION.**

13.1. Plaintiffs' Counsel shall administer the settlement, including the notice and claims process and mailing of checks described in Sections 10 and 13.

13.2. Subject to Court approval, the following schedule shall apply for Plaintiffs' Counsel to make payments from the amounts deposited in the Client Trust Account under this Agreement:

16

13.2.1.    Within 10 days following the initial payment of seventy thousand dollars ($70,000) by Defendants, (1) Plaintiffs' Counsel shall be paid 40 percent of that amount in fees; and (2) the balance of the seventy thousand dollars ($70,000) shall be paid to Participating Plaintiffs in proportion to their amount of the Total Settlement Payment.

13.2.2.    Within 10 days following the second payment of thirty thousand dollars ($30,000) by Defendants, (1) Plaintiffs' Counsel shall be paid 40 percent of that amount in fees; and (2) the balance of the payment of thirty thousand dollars ($30,000) shall be paid to Participating Plaintiffs in proportion to their amount of the Total Settlement Payment.

13.2.3.    Within 10 days following the third payment of two hundred fifty thousand dollars ($250,000) by Defendants, (1) Plaintiffs' Counsel shall be paid 40 percent of that amount in fees plus any outstanding Litigation Costs; and (2) the balance of the payment of two hundred fifty thousand dollars ($250,000) shall be paid to Participating Plaintiffs in proportion to their amount of the Total Settlement Payment.

13.3.   Checks that remain uncashed by Plaintiffs ninety (90) days after they are mailed will be stopped and the money returned to the Client Trust Account. Any Participating Plaintiff whose check was stopped will be allowed to contact

Plaintiffs' Counsel and request that the check be reissued. The check will be reissued provided that the Participating Plaintiff's request is made on or before 90 days following the last scheduled mailing of checks as described in Section 13.2.3. Any Settlement Funds remaining in the Client Trust Account ninety (90) days following the last scheduled mailing of checks will be divided among the Participating Plaintiffs in proportion to their amount of the Total Settlement Payment.

13.4. Plaintiffs' counsel shall be solely responsible for issuing and mailing Forms 1099 as described in Section 16 in the timeframe required by law.

## 14. ATTORNEYS' FEES, ADMINSTRATION COSTS, LITIGATION EXPENSES, AND INCENTIVE AWARDS.

14.1 At the time the Parties file their Joint Motion for Settlement Approval, Plaintiffs' Counsel shall seek approval from the Court for an award of Attorneys' Fees, Litigation Expenses, Administrative Costs, and Named Plaintiff incentive awards—all to be paid from the Gross Settlement Amount.

14.2 Payment of Attorneys' Fees is established to compensate Plaintiffs' Counsel for their work in obtaining this Settlement for the benefit of Plaintiffs. The enforceability of this Agreement is not contingent on the amount of Attorneys' Fees, Litigation Expenses, Administrative Costs, or Named Plaintiff incentive awards that may be awarded.

14.3  *Attorneys' Fees:*  Plaintiffs will make a request for Attorneys' Fees not to exceed not to exceed one hundred forty thousand dollars ($140,000).  Any Attorneys' Fees awarded to Plaintiffs' Counsel in this action shall be paid out of the Settlement Fund of three hundred forty-nine thousand dollars ($349,000).  This Settlement is not contingent on the Court awarding Plaintiffs' Counsel any specific amount of Attorneys' Fees.  Rather, the Parties have merely agreed that Plaintiffs shall make a request for Attorneys' not to exceed the amount specified herein.  The Parties intend for this Settlement to be effective even if the Court awards less than requested.

14.4  *Litigation Expenses:*  Plaintiffs' Counsel will request reimbursement of Litigation Expenses incurred to date in an amount not to exceed six  thousand eight hundred four dollars and 21/100 ($6,804.21).  Any Litigation Expenses awarded to Plaintiffs' Counsel in this action shall be paid out of the Settlement Fund of three hundred forty-nine thousand dollars ($349,000).  Except as expressly stated in this Agreement, Plaintiffs' Counsel shall be responsible for all Litigation Expenses in excess of the payments set forth in this Section.  This settlement is not contingent on the Court awarding any specific amount of Litigation Expenses.  Rather, the Parties have merely agreed that Plaintiffs' Counsel shall make a request for Litigation Expenses not to exceed the amount specified herein.  The Parties

intend for this settlement to be effective even if the Court awards less than requested.

14.5 *Named Plaintiff Incentive Awards*: Plaintiffs may apply to the Court for Named Plaintiff incentive awards for the time, effort and expense that the Named Plaintiffs incurred in securing the Settlement in this lawsuit (in addition to compensating them for their portion of the overall Settlement proceeds available to the Settlement Class). Subject to Court approval, Named Plaintiff incentive awards of two thousand dollars ($2,000) will be provided to each Named Plaintiff who accepts this Settlement. The Named Plaintiff incentive awards shall be paid out of the Settlement Fund of three hundred forty-nine thousand dollars ($349,000). The Named Plaintiff incentive awards are in addition to the amounts the Named Plaintiffs would be provided pursuant to pro rata distribution described in Section 15.

## 15.    SETTLEMENT ALLOCATIONS AND DISTRIBUTION SCHEDULE.

15.1. Plaintiffs' Counsel has determined the Total Settlement Payment for each Plaintiff based on formal and informal discovery undertaken in this litigation. The Total Settlement Payments are based generally on each Plaintiff's length of employment and frequency of work at and fines and fees paid to Club 22. The Total Settlement Payments are exclusive of any awarded Named Plaintiff incentive awards. The Total Settlement Payments also assume that the amount of Attorneys'

Fees, Litigation Expenses and Administration Costs listed in Sections 14 will be awarded in full.

15.2. The amount of each Plaintiff's Total Settlement Amount are listed on Exhibit H to this Agreement.

15.3. Each Plaintiff's Total Settlement Amount will also be listed on her Notice and Release and Claim Form.

15.4. In the event the Court awards a lower amount of Attorneys' Fees, Litigation Expenses, and Administration Costs, the difference will be reallocated to the Participating Plaintiffs, proportionally based on the amounts listed in Exhibit H.

## 16.    TAXES.

16.1. Plaintiffs shall inform Defendants by January 15 of each year of any amounts distributed from the Settlement Fund to each Participating Plaintiff and to Plaintiffs' Counsel during the preceding year.

16.2. Plaintiffs' counsel shall issue and mail a Form 1099 to each Plaintiff yearly for any payments made to that Plaintiff in the preceding year under this Agreement.

16.3. *Taxation and No Tax Advice*:    Neither Defendants, Defendants' Counsel nor Plaintiffs' Counsel shall be responsible for paying any Plaintiff's tax obligations arising from this Settlement.    Nothing in this Agreement shall be

construed as Defendants, Defendants' Counsel or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of a Participating Plaintiffs' participation in any portion of this Agreement.

16.4.  Defendants shall be solely responsible for any tax liability or penalties related to any failure on their part to pay payroll taxes or employer-side withholding related to this Settlement.

## 17.  DISMISSALS.

17.1.  The Parties shall file a stipulation of dismissal, dismissing this case following final payment from Defendants as described in Section 8.

## 18.   COURT APPROVAL.

18.1.  The Parties shall agree on a final Joint Motion for Settlement Approval no later than July 5, 2016.   Plaintiffs' Counsel will prepare this joint motion for approval by Defendants' Counsel.  This Agreement shall be Exhibit 1 to the Parties' Joint Motion for Settlement Approval.  The Parties agree to file their Joint Motion at least fourteen (14) days prior to the Approval Hearing, if any, or as otherwise required by the Court.

## 19.  MISCELLANEOUS.

19.1.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the signatories hereto or their successors-in-interest.  No oral amendment or modification shall be permitted or

effective.

19.2.  This Agreement and the Settlement were entered into after substantial good faith, arms-length negotiations between the Parties, Plaintiffs' Counsel and Defendants' Counsel.

19.3.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same Agreement. This Agreement may be executed by signature delivered by facsimile or PDF, and need not be the original "ink" signature.

19.4.  This Agreement and the exhibits hereto constitute the entire fully-integrated Agreement among the Parties.  No representations, warranties or inducements have been made to any Party concerning the Settlement, this Agreement or its exhibits, other than the representations, warranties and covenants contained in such documents.

19.5.  The headings and captions inserted in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

19.6.  Except as otherwise provided in this Agreement, the Parties shall bear their own respective costs and fees.

19.7.  None of the Parties, or their respective counsel, shall be deemed to be

the drafter of this Agreement or its exhibits for purposes of construing their provisions. The language in all parts of this Agreement and its exhibits shall be interpreted according to its fair meaning, and shall not be interpreted for or against any of the Parties as the drafter of the language.

19.8. All time computations under this Agreement shall be done in accordance with the provisions of the Federal Rules of Civil Procedure.

19.9. The waiver by any of the Parties to this Agreement of any provision thereof shall not be deemed a waiver by that Party of any other provision of this Agreement.

19.10. Each and every one of the Parties hereto acknowledges and agrees that he/she/it will, and shall, at all times subsequent to the execution of this Agreement and upon reasonable request, make, do and execute, or cause to be made, done or executed, all such further documents and instruments to effectuate the full intent, purpose, covenants and conditions as set forth herein as any Party may require.

## 20.    **BINDING ON SUCCESSORS AND ASSIGNS**

20.1 This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administers, successors, and assigns.

24

## 21.    PARTIES' AUTHORITY

21.1. The signatories hereto represent that they are fully authorized to execute this Agreement on behalf of their clients and, in doing so, bind the Parties to the Agreement's terms and conditions. The signatures below are not meant to make Counsel parties to this Agreement. Further, each Plaintiff retains her ability to accept or reject this settlement as describe above in Section 10.

Dated: _June 13_ , 2016.

SCHULTEN WARD TURNER & WEISS, LLP

_Dean R. Fuchs_

Dean R. Fuchs
Georgia Bar No. 279170
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
Telephone (404) 688-6800
Fax (404) 688-6840

And


SERRATELLI, SCHIFFMAN & BROWN, PC

_Lori K. Serratelli_

Lori K. Serratelli
PA Supreme Ct. ID No. 27426
2080 Linglestown Road, Suite 201
Harrisburg, PA 17110
Telephone (717) 540-9170
Fax (717) 540-5481

ATTORNEYS FOR PLAINTIFFS

25

CUNNINGHAM, CHERNICOFF &
WARSHAWSKY, PC

Jordan D. Cunningham
PA Supreme Court ID No. 23144
2320 North Second Street
P.O. Box 60457
Harrisburg, PA 17106
Telephone (717) 238-6570
Fax (717) 238-4809

ATTORNEY FOR DEFENDANTS

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NASHANDA WATSON, et al.

Plaintiffs,

CIVIL ACTION FILE NO.
1:13-CV-03049-JEJ

v.

MR. G'S ENTERTAINMENT, INC.
d/b/a CLUB 22, et al.

Defendants.

## THIS NOTICE CONCERNS THE SETTLEMENT OF YOUR CLAIMS RELATED TO THIS LAWSUIT

## THIS NOTICE PROVIDES INSTRUCTION ON HOW YOU CAN RECOVER YOUR SETTLEMENT IN THE AMOUNT OF:

## $XXXXXX

## INTRODUCTION

You are a named Plaintiff in the above-styled minimum wage and overtime lawsuit against the Defendants. This lawsuit was filed in your name, but also on behalf of current and former entertainers at Club 22 in Harrisburg, PA dating back to December 2010. The entertainers participating in this lawsuit are called "Plaintiffs." The individuals and entities that are being sued are called "Defendants." You are receiving this notice because you signed a consent form to join this lawsuit as a Plaintiff and have agreed to have Plaintiffs' Counsel, the law firms of Schulten Ward Turner & Weiss, LLP and Serratelli, Schiffman & Brown, PC represent your interests. The decision to participate or not participate in this Settlement may have legal consequences, so please review this notice carefully.

Plaintiffs' counsel has obtained what they believe to be a fair and reasonable settlement offer in this case. Plaintiffs' counsel conducted a thorough investigation into the claims and facts of the lawsuit. Based on their investigation and evaluation, Plaintiffs' counsel believes that the settlement is in the best interest of

2

all Plaintiffs in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendants, the ability to collect a judgment if one is obtained, and the possibility of appeal.

The settlement still has to be approved by the Court. If it is approved in the form described below, you will receive payments only if you return the attached Claim Form and Form W-9, and they are received by Plaintiffs' Counsel (Mr. Fuchs) on or before **MONDAY, JULY 25, 2016**.

## DESCRIPTION OF THE LAWSUIT

In December, 2013, Plaintiffs Nashanda Watson, Jacqulene Carter, Talya Young and Alexis Harr initiated this lawsuit against Defendants Mr. G's Entertainment, Inc. d/b/a Club 22, Gary Dobrinoff and Christopher W. Danilshenko. The lawsuit was brought not only by you individually, but on behalf of all other individuals who were similarly-situated to you. You alleged that Defendants misclassified entertainers at Club 22 as independent contractors, rather than as employees. You also alleged that Defendants failed to pay entertainers any wages and charged them fines and fees in order to work in violation of the federal Fair Labor Standards Act, the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment Collection Act. This lawsuit seeks recovery of those wages, fines, and fees.

Rather than proceed to litigate the issue of how much, if any, money Plaintiffs are owed, the Court ordered the parties to attend mediation. Mediation was conducted in Harrisburg, PA on May 5, 2016 by a U.S. Magistrate Judge assigned to this case. The case was settled by the parties at the mediation.

## SETTLEMENT

Plaintiffs' Counsel (with the assistance of several entertainers who appeared at the mediation) has negotiated what they believe to be a fair, adequate, and reasonable settlement for all Plaintiffs in this case. This settlement resolves the matter and represents a *compromise*—Defendants are paying more than they believe is owed and Plaintiffs are accepting less than they believe is owed. In light of the risks of continued litigation and the difficulty inherent in collecting judgments, Plaintiffs' Counsel believes the settlement amount is fair, reasonable, and adequate compensation to settle this case. The settlement payments specified in this notice are the payments you will receive if you return the attached Claim Form and it is received by Plaintiffs' Counsel on or before **MONDAY, JULY 25, 2016**.

3

## SETTLEMENT ALLOCATIONS AND TIMING OF PAYMENTS

**TO RECEIVE YOUR SHARE OF THE SETTLEMENT, YOU MUST RETURN THE ATTACHED CLAIM FORM AND IT MUST BE RECEIVED BY PLAINTIFFS' COUNSEL ON OR BEFORE <u>MONDAY, JULY 25, 2016</u>.**

If you wish to participate in this settlement, you must sign and return the enclosed Claim Form and Form W-9. If the Settlement is approved by the Court, you will receive a gross payment of at least **$XXXXX**. This amount was based on the proportion of damages you are owed based on your estimated length and frequency of work at Club 22.

Attorneys' fees and costs have already been subtracted from this amount. Consistent with your fee agreement with Plaintiffs' Counsel, Counsel has been allocated 40% of the total settlement, plus costs they have advanced to litigate your claims and administer this Settlement. These amounts have not been paid to Plaintiffs' Counsel yet and are subject to Court approval. If the Court approves the settlement and fees and costs requested by Plaintiffs' Counsel, you will receive the full payment amount identified above and will not be required to pay any fees and costs out of that amount.

Because Defendants will be paying this Settlement in three (3) installment payments, your gross payment will be paid to you over the course of approximately 24 months following the Court granted approval of this Settlement. We will let you know if the Court approves this Settlement, but we do not currently know when that will be. We expect it will be in June, 2016. If the Court approves this Settlement without modification, payments to you will be in mid-August, 2016, in February 2017, and in August 2018.

Because Plaintiffs' Counsel have incurred out of pocket costs to litigate your claims, Plaintiffs' Counsel will be reimbursed those costs in final payment installment. For each payment installment made by Defendants, Plaintiffs' Counsel will be paid their awarded fees in proportion the amount being distributed to Plaintiffs for that installment.

The expected timing and your expected payments are as follows:

4

| Payment Installment | Check Mailing Date | Amount |
|---|---|---|
| 1 | August 15, 2016 | You will receive approximately 33.333% of your gross settlement amount |
| 2 | February 15, 2017 | You will receive approximately 14.3% of your gross settlement amount |
| 3 | August 15, 2018 | You will receive approximately 52.37% of your gross settlement amount |

Because the amounts Plaintiffs' Counsel will be reimbursed for the costs of administering settlement will paid as they are incurred, the percentages listed above are estimated percentages. Regardless, you will be paid following each Payment Installment and will have received your total gross settlement amount by the end August, 2018.

**IT IS VERY IMPORTANT THAT YOU KEEP PLAINTIFFS' COUNSEL INFORMED OF ANY CHANGES TO YOUR CONTACT INFORMATION THROUGH THE END OF AUGUST, 2018. YOU CAN UPDATE YOUR CONTACT INFORMATION BY E-MAILING <u>D.FUCHS@SWTWLAW</u> OR BY CALLING PLAINTIFFS' COUNSEL AT 404-688-6800.**

## TAXES

Your settlement payments will be designated as non-wage income. You will receive an IRS Form 1099 yearly for amounts paid to you under this settlement. NOTE: Each person's tax circumstances vary, and Plaintiffs' Counsel cannot advise you on your tax issues. You shall be solely responsible for the payment of any local, state or federal taxes resulting from or attributable to the payments received under this settlement. You should consult a tax preparer with questions with regard to all payments in this settlement.

## SECURITY

The amounts Defendants are to pay under this Settlement are secured by a

promissory note and first lien on certain real property owned by Defendants. This means that if Defendants do not make their scheduled payments, we can foreclose on that real property and sell it to satisfy the settlement. That money will then be distributed proportionally to Plaintiffs, including you, and to Plaintiffs' Counsel in proportion to the amounts they would have otherwise been paid.

## WHAT IF I CHOOSE TO REJECT THE SETTLEMENT OFFER?

If you do not wish to accept this settlement, you must notify Plaintiffs' Counsel in writing and deliver your notification so that it is received no later than **MONDAY, JULY 25, 2016.** The notification must state (1) your full legal name; and (2) that you wish to reject the settlement offer in this case. You can mail, fax, or email your written notification to Plaintiffs' Counsel:

Dean R. Fuchs

Schulten Ward Turner & Weiss, LLP

260 Peachtree Street, NW

Suite 2700

Atlanta, GA 30303

Email: d.fuchs@swtwlaw.com

Fax: 404-688-6840

If you choose to reject this offer of settlement, your claim will be dismissed without prejudice. If you wish to pursue your claims after dismissal, you will need to find a new lawyer to assist you, or you may pursue your claims on your own. If you reject this offer of settlement and do not pursue your claim within the statutory period, some or all of your claims may be barred by the passage of time.

## UNCLAIMED SETTLEMENT FUNDS

You will have 90 days following each mailing of settlement checks to cash your check. If you do not cash your check within 90 days, the check will be stopped. If you would like the check reissued, you may contact Plaintiffs' Counsel at the address and number listed above to request that the check be reissued. If you do not make this request before 90 days following the last installment payment, the money allocated to you will be forfeited and returned to the Defendants.

## NO RETALIATION OR DISCRIMINATION

To the extent you still perform at Club 22, Defendants will not take any adverse action against any individual because she participates in the settlement.

## SCOPE OF RELEASE

By returning the attached Claim Form, you will release and waive all rights you have to recover any and all remedies of any kind from the Defendants, and their officers, directors, shareholders, principals, employees, agents, attorneys, successors and assigns (and the officers, directors, shareholders, principals, employees, agents, attorneys, successors, and assigns of such affiliated corporations, parent corporations, divisions, partnerships, subsidiaries, collectively hereinafter "Releasees") arising from or relating to your work at Club 22. You further release and waive all rights you have to file a lawsuit on my own behalf, or on behalf of any other individual, for monetary, injunctive, declaratory, or other relief, arising from or relating to your work at Club 22, including without limitation to claims made pursuant to the Fair Labor Standards Act ("FLSA") for Defendant's failure to pay minimum wages under the FLSA, 29 U.S.C. §206 et seq.; failure to pay overtime under the FLSA, 29 U.S.C. §207; retaliation under FLSA 29 U.S.C. §215, including attorney's fees and expenses of this litigation; claims made on the basis of race, sex, religion, national origin, or any other category protected by law under Title VII of the Civil Rights Act of 1964, including claims for retaliation, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, the Fair Labor Standards Act or any federal, state or local employment law, unfair practice, safety issue law, or based upon any contract, tort, whistleblower, personal injury, or wrongful discharge theory, or otherwise related to your work at Club 22. In return for the payments and benefits described above, you unconditionally release, discharge, and hold harmless Defendants from each and every claim, cause of action, right, liability or demand of any kind and nature, and from any claims which may be derived therefrom (collectively referred to as "claims"), that you had, have, may have, or might claim to have against the Defendants at the time you execute the Settlement Claim Form. The monies you receive from this Settlement is being reported to the IRS and you will be responsible to pay the taxes, if any, owed to federal, state, and local taxing agencies. You are not releasing Defendants or any other party from any claims that may arise after the date you sign the enclosed Claim Form.

## NON-DISCLOSURE

By returning the attached Claim Form, you agree not to contact any news media outlet for the purpose of advertising, marketing, publishing, or issuing press releases about the terms of this Settlement or are not to make any statements about the Settlement on social media such as Face Book, Twitter, or other social media platform or forums. You may only discuss the terms of the Settlement with the attorneys who represent you or your interests in this case, your spouse, or your tax preparer. In the event that the news media contacts you, you agree that you will state that "this matter has been settled" or "no comment."

## QUESTIONS ABOUT SETTLEMENT

Questions about the settlement should be directed to Plaintiffs' Counsel:

Dean R. Fuchs
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, NW
Suite 2700
Atlanta, GA 30303

Email: d.fuchs@swtwlaw.com
Telephone: 404-688-6800
Fax: 404-688-6840

**TO OBTAIN YOUR PORTION OF THIS SETTLEMENT, YOU MUST SIGN AND RETURN THE ATTACHED CLAIM FORM. YOUR CLAIM FORM *MUST BE RECEIVED BY PLAINTIFFS' COUNSEL ON OR BEFORE <u>MONDAY, JULY 25, 2016</u>.***

**IF YOUR CLAIM FORM (AND FORM W-9 WHICH MUST SET FORTH YOUR CORRECT SOCIAL SECURITY NUMBER) IS NOT RECEIVED BY THE DEADLINE OR IF YOU DO NOT REJECT THIS SETTLEMENT BY THE DEADLINE, YOUR CLAIMS IN THIS LAWSUIT WILL BE DISMISSED WITH PREJUDICE AND YOU WILL NOT BE ABLE TO SUE DEFENDANTS FOR THE CLAIMS IN THIS LAWSUIT OR RECOVERY ANY MONEY FROM THEM.**

# EXHIBIT B

**Watson, et al. v. Mr. G's Entertainment, Inc., et al.**
**Civil Action File No. 1:13-CV-3049-JEJ**

## SETTLEMENT CLAIM FORM

I received the notice of settlement in the lawsuit against Mr. G's Entertainment, Inc. d/b/a Club 22, Gary Dobrinoff and Christopher Danilshenko. ("Defendants"). The notice informed me that I will receive a gross settlement amount of $XXXXX if I return this Claim Form and it is received by the deadline set forth in the notice. I wish to take part in the settlement.

By returning this Claim Form, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, I hereby release, remise, quit-claim, and waive all rights I have to recover any and all remedies of any kind from the Defendants, and their affiliated officers, directors, shareholders, principals, employees, agents, attorneys, successors and assigns (and the officers, directors, shareholders, principals, employees, agents, attorneys, successors, and assigns of such affiliated corporations, parent corporations, divisions, partnerships, subsidiaries, collectively hereinafter "Releasees") arising from or relating to my work at Club 22 from December 13, 2010 to present. I further release, remise, quit-claim, and waive all rights I have to file a lawsuit on my own behalf, or on behalf of any other individual, for monetary, injunctive, declaratory, or other relief, arising from or relating to my work at Club 22, including without limitation to claims made on the basis of race, sex, religion, national origin, or any other category protected by law under Title VII of the Civil Rights Act of 1964, including claims for retaliation, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, the Fair Labor Standards Act or any federal, state or local employment law, unfair practice, safety issue law, or based upon any contract, tort, whistleblower, personal injury, or wrongful discharge theory, or otherwise related to my work at Club 22. In return for the payments and benefits described above, I unconditionally release, remise, quit-claim, discharge, and hold harmless Releasees from each and every claim, cause of action, right, liability or demand of any kind and nature, and from any claims which may be derived therefrom (collectively referred to as "claims"), that I had, have, may have, or might claim to have against the Releasees from December 13, 2010 to the time I execute this Settlement Claim Form. I am not releasing Releasees or any other party from any claims that may arise after the date I sign this form.

1

By returning this Settlement Claim Form, I agree not to disclose the terms of the Settlement or Settlement Agreement to anyone other than my attorney in this case, my spouse, or my tax preparer. In the event that the news media contacts me, I agree that I will state that "this matter has been settled."

**Please confirm that your name and contact information listed below is correct and sign this form. If you have new contact information, please write it in below.**

Signature: _____

Printed First Name: _____

Printed Last Name: _____

Address: _____

City, State Zip: _____

EMAIL: _____

PHONE: _____

**Mail, Fax, or Email this signed form to:**

Dean R. Fuchs
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, NW
Suite 2700
Atlanta, GA 30303

Email: d.fuchs@swtwlaw.com
Fax: 404-688-6840

**THE FORM MUST BE RETURNED & RECEIVED BY MONDAY, JULY 25, 2016.**

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NASHANDA WATSON, et al.

Plaintiffs,

CIVIL ACTION FILE NO.
1:13-CV-03049-JEJ

v.

MR. G'S ENTERTAINMENT, INC.
d/b/a CLUB 22, et al.

Defendants.

## THIS NOTICE CONCERNS THE SETTLEMENT OF YOUR CLAIMS RELATED TO THIS LAWSUIT

## THIS NOTICE PROVIDES INSTRUCTION ON HOW YOU CAN RECOVER YOUR SETTLEMENT IN THE AMOUNT OF:

### $18,166.66

---

## INTRODUCTION

By signing and returning a Consent Form, you previously joined this minimum wage and overtime lawsuit. This lawsuit was filed on behalf of current and former entertainers at Club 22 in Harrisburg, PA. The entertainers in this lawsuit are called "Plaintiffs." The individuals and entities that are being sued are called "Defendants." You are receiving this notice because you signed a consent form to join this lawsuit as a Plaintiff and have agreed to have Plaintiffs' Counsel, the law firms of Schulten Ward Turner & Weiss, LLP and Serratelli, Schiffman & Brown, PC represent your interests in this matter. The decision to participate or not participate in this Settlement may have legal consequences, so please review this notice carefully.

Plaintiffs' counsel has obtained what they believe to be a fair and reasonable settlement offer in this case. Plaintiffs' counsel conducted a thorough investigation into the claims and facts of the lawsuit. Based on their investigation and evaluation, Plaintiffs' counsel believes that the settlement is in the best interest of

2

all Plaintiffs in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendants, the ability to collect a judgment if one is obtained, and the possibility of appeal.

The settlement still has to be approved by the Court. If it is approved in the form described below, you will receive payment only if you return the attached Claim Form and it is received by Plaintiffs' Counsel on or before **MONDAY, JULY 25, 2016**.

## DESCRIPTION OF THE LAWSUIT

In December, 2013, Plaintiffs Nashanda Watson, Jacqulene Carter, Talya Young and Alexis Harr initiated this lawsuit against Defendants Mr. G's Entertainment, Inc. d/b/a Club 22, Gary Dobrinoff and Christopher W. Danilshenko. The lawsuit was brought not only by you individually, but on behalf of all other individuals who were similarly-situated to you. You alleged that Defendants misclassified entertainers at Club 22 as independent contractors, rather than as employees. You also alleged that Defendants failed to pay entertainers any wages and charged them fines and fees in order to work in violation of the federal Fair Labor Standards Act, the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment Collection Act. This lawsuit seeks recovery of those wages, fines, and fees.

Rather than proceed to litigate the issue of how much, if any, money Plaintiffs are owed, the Court ordered the parties to attend mediation. Mediation was conducted in Harrisburg, PA on May 5, 2016 by a U.S. Magistrate Judge assigned to this case. The case was settled by the parties at the mediation.

## SETTLEMENT

Plaintiffs' Counsel has negotiated what they believe to be a fair, adequate, and reasonable settlement for all Plaintiffs in this case. This settlement resolves the matter and represents a *compromise*—Defendants are paying more than they believe is owed and Plaintiffs are accepting less than they believe is owed. In light of the risks of continued litigation and the difficulty inherent in collecting a future judgment, Plaintiffs' Counsel believes these amounts are fair, reasonable, and adequate compensation to settle this case. The settlement payments specified in this notice are the payments you will receive if you return the attached Claim Form and it (and the enclosed Form W-9 setting forth your correct Social Security Number) are received by Plaintiffs' Counsel on or before ***MONDAY, JULY 25, 2016.***

3

## SETTLEMENT ALLOCATIONS AND TIMING OF PAYMENT

**TO RECEIVE YOUR SHARE OF THE SETTLEMENT, YOU MUST RETURN THE ATTACHED CLAIM FORM AND IT MUST BE RECEIVED BY PLAINTIFFS' COUNSEL ON OR BEFORE <u>MONDAY, JULY 25, 2016</u>.**

If you wish to participate in this settlement, you must sign and return the enclosed Claim Form and Form W-9. If the Settlement is approved by the Court, you will receive a gross payment of at least **$18,166.66**. This amount was based on the proportion of damages you are owed based on your estimated length and frequency of work at Club 22.

Attorneys' fees and costs have already been subtracted from this amount. Consistent with your fee agreement with Plaintiffs' Counsel, Counsel has been allocated 40% of the total settlement, plus costs they have advanced to litigate your claims and administer this Settlement. These amounts have not been paid to Plaintiffs' Counsel yet and are subject to Court approval. If the Court approves the settlement and fees and costs requested by Plaintiffs' Counsel, you will receive the full payment amount identified above and will not be required to pay any fees and costs out of that amount.

Because Defendants will be paying this Settlement in three (3) installment payments, your gross payment will be paid to you over the course of approximately 24 months following the Court granted approval of this Settlement. We will let you know if the Court approves this Settlement, but we do not currently know when that will be. We expect it will be in June, 2016. If the Court approves this Settlement without modification, payments to you will be in mid-August, 2016, in February 2017, and in August 2018.

Because Plaintiffs' Counsel have incurred out of pocket costs to litigate your claims, Plaintiffs' Counsel will be reimbursed those costs in final payment installment. For each payment installment made by Defendants, Plaintiffs' Counsel will be paid their awarded fees in proportion the amount being distributed to Plaintiffs for that installment.

The expected timing and your expected payments are as follows:

| Payment Installment | Check Mailing Date | Amount |
|---|---|---|
| 1 | August 15, 2016 | You will receive approximately 33.333% of your gross settlement amount |
| 2 | February 15, 2017 | You will receive approximately 14.3% of your gross settlement amount |
| 3 | August 15, 2018 | You will receive approximately 52.37% of your gross settlement amount |

Because the amounts Plaintiffs' Counsel will be reimbursed for the costs of administering settlement will paid as they are incurred, the percentages listed above are estimated percentages. Regardless, you will be paid following each Payment Installment and will have received your total gross settlement amount by the end August, 2018.

**IT IS VERY IMPORTANT THAT YOU KEEP PLAINTIFFS' COUNSEL INFORMED OF ANY CHANGES TO YOUR CONTACT INFORMATION THROUGH THE END OF AUGUST, 2018. YOU CAN UPDATE YOUR CONTACT INFORMATION BY E-MAILING D.FUCHS@SWTWLAW OR BY CALLING PLAINTIFFS' COUNSEL AT 404-688-6800.**

## TAXES

Your settlement payments will be designated as non-wage income. You will receive an IRS Form 1099 yearly for amounts paid to you under this settlement. NOTE: Each person's tax circumstances vary, and Plaintiffs' Counsel cannot advise you on your tax issues. You shall be solely responsible for the payment of any local, state or federal taxes resulting from or attributable to the payments received under this settlement. You should consult a tax preparer with questions with regard to all payments in this settlement.

## SECURITY

The amounts Defendants are to pay under this Settlement are secured by a

promissory note and first lien on certain real property owned by Defendants. This means that if Defendants do not make their scheduled payments, we can foreclose on that real property and sell it to satisfy the settlement. That money will then be distributed proportionally to Plaintiffs, including you, and to Plaintiffs' Counsel in proportion to the amounts they would have otherwise been paid.

## WHAT IF I CHOOSE TO REJECT THE SETTLEMENT OFFER?

If you do not wish to accept this settlement, you must notify Plaintiffs' Counsel in writing and deliver your notification so that it is received no later than **MONDAY, JULY 25, 2016.** The notification must state (1) your full legal name; and (2) that you wish to reject the settlement offer in this case. You can mail, fax, or email your written notification to Plaintiffs' Counsel:

Dean R. Fuchs
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
Email: d.fuchs@swtwlaw.com
Fax: 404-688-6840

If you choose to reject this offer of settlement, your claim will be dismissed without prejudice. If you wish to pursue your claims after dismissal, you will need to find a new lawyer to assist you, or you may pursue your claims on your own. If you reject this offer of settlement and do not pursue your claim within the statutory period, some or all of your claims may be barred by the passage of time.

## UNCLAIMED SETTLEMENT FUNDS

You will have 90 days following each mailing of settlement checks to cash your check. If you do not cash your check within 90 days, the check will be stopped. If you would like the check reissued, you may contact Plaintiffs' Counsel at the address and number listed above to request that the check be reissued. If you do not make this request before 90 days following the last installment payment, the money allocated to you will be forfeited and returned to the Defendants.

## NO RETALIATION OR DISCRIMINATION

To the extent you still perform at Club 22, Defendants will not take any adverse action against any individual because she participates in the settlement.

6

## SCOPE OF RELEASE

By returning the attached Claim Form, you will release Defendants, their respective officers, directors, shareholders, employees, agents, attorneys, successors, and assigns from all claims asserted in this lawsuit including, but not limited to: claims made pursuant to the Fair Labor Standard Act ("FLSA") for Defendants failure to pay minimum wage under the FLSA, 29 U.S.C. § 206, *et seq.*; failure to pay overtime under the FLSA, 29 U.S.C. § 207; retaliation under the FLSA, 29 U.S.C. § 215, including attorneys' fees and expenses of this litigation; claims made on the basis of race, sex, religion, national origin, or any other category protected by law under Title VII of the Civil Rights Act of 1964, including claims for retaliation, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, the Fair Labor Standards Act or any federal, state or local employment law, unfair practice, safety issue law, or based upon any contract, tort, whistleblower, personal injury, or wrongful discharge theory, or otherwise related to your work at Club 22.

## NON-DISCLOSURE

By returning the attached Claim Form, you agree not to contact any news media outlet for the purpose of advertising, marketing, publishing, or issuing press releases about the terms of this Settlement. You also agree not to make any statements about the Settlement to third parties; you also agree not to make any statements about the Settlement on social media, such as Face Book, Twitter, or other social media platform or forum. You may discuss the terms of the Settlement with the attorneys who represent you in this case, your spouse, or your tax preparer. In the event that the news media contacts you, you agree that you will state that "this matter has been settled" or "no comment."

## QUESTIONS ABOUT SETTLEMENT

Questions about the settlement should be directed to Plaintiffs' Counsel:

Dean R. Fuchs
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
Email: d.fuchs@swtwlaw.com
Telephone: 404-688-6800
Fax: 404-688-6840

7

**TO OBTAIN YOUR PORTION OF THIS SETTLEMENT, YOU MUST SIGN AND RETURN THE ATTACHED CLAIM FORM. YOUR CLAIM FORM MUST BE RECEIVED BY PLAINTIFFS' COUNSEL ON OR BEFORE <u>MONDAY, JULY 25, 2016.</u>**

**IF YOUR CLAIM FORM (AND FORM W-9) IS NOT RECEIVED BY THE DEADLINE OR IF YOU DO NOT REJECT THIS SETTLEMENT BY THE DEADLINE, YOUR CLAIMS IN THIS LAWSUIT WILL BE DISMISSED WITH PREJUDICE AND YOU WILL NOT BE ABLE TO SUE DEFENDANTS FOR THE CLAIMS IN THIS LAWSUIT OR RECOVERY ANY MONEY FROM THEM.**

**IF YOUR CLAIM FORM IS NOT RECEIVED BY THE DEADLINE OR IF YOU DO NOT REJECT THIS SETTLEMENT BY THE DEADLINE, YOUR CLAIMS IN THIS LAWSUIT WILL BE DISMISSED WITH PREJUDICE AND YOU WILL NOT BE ABLE TO SUE DEFENDANTS FOR THE CLAIMS IN THIS LAWSUIT OR RECOVERY ANY MONEY FROM THEM.**

# EXHIBIT E

***Prepared by:***    Jordan D. Cunningham, Esquire
CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.
2320 North Front Street
Harrisburg, PA  17110


***Return to:***    Jordan D. Cunningham, Esquire
CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.
2320 North Front Street
Harrisburg, PA  17110


***Parcel Identification No.:***
***35-092-005-000-0000***

---

## DEED

THIS DEED is made the __*13*__ day of June in the year Two Thousand Sixteen (2016).

BETWEEN **Gary L. Dobrinoff, Executor of the Estate of Helen G. Dobrinoff,** GRANTOR,

## AND

**Gary L. Dobrinoff,** an adult individual, who resides at 3819 Lampost Lane, Camp Hill, Cumberland County, Pennsylvania, party of the second part, GRANTEE,

WHEREAS, the said Helen G. Dobrinoff became in her lifetime seised in fee of and in a certain lot or piece of ground, together with the buildings and improvements thereof erected, situate in Lower Paxton Township, Dauphin County, Pennsylvania known as Lot No. 7-B on a re-subdivision of Lot No. 7, Section A, Olde Colonial Village, prepared for Gary Dobrinoff by Richard F. Znn, Registered Surveyor, dated January 20, 1971 and recorded in the Dauphin County Recorder's Office in Plan Book K, Vol. 2 at Page 70, and more particularly described hereafter; and being so seised, departed this life on May 16, 2008 having first made her Last Will and Testament in writing, dated August

28, 2007, duly probated in the Office of the Register of Wills of Cumberland County on September 20, 2007 at file number 21-10-0964 wherein and whereby she appointed as executor thereof said Gary L. Dobrinoff to whom letters testamentary were duly issued by said Register of Wills on_____, and wherein and whereby said premises hereinafter described were devised to Gary L. Dobrinoff, all in and by said Will the records of said Register of Wills, recourse being had, appears.

NOW THIS INDENTURE WITHNESSETH that said Grantor, for and in consideration of the sum of One Dollar and 00/100 ($1.00) and other good and valuable consideration to them in hand paid by said Grantee at or before the sealing and delivery hereof, receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, released, and confirmed, and by these presents do grant, bargain, sell, alien, release and confirm unto said Grantee, her heirs and assigns,

ALL THAT CERTAIN piece or parcel of land situate in Lower Paxton Township, Dauphin County, Pennsylvania, more particularly bounded and described as follows, to wit:

BEGINNING at a stake found on the westernmost dedicated right-of-way line of Colonial Road, also known as LR22021, said stake marking the common point of adjoinder of the within described tract and Lot No. 6 on a plan of subdivision of Olde Colonial Village; thence departing from the westernmost dedicated right-of-way line of Colonial Road and extending along Lot No. 6 South forty-four degrees six minutes West (S 44° 06' W) for a distance of one hundred nineteen and fifty eight hundredths feet (119.58') to a concrete monument; thence extending along other lands now identified as Lot No. 7A of a re-subdivision of Olde Colonial Village North twenty-eight degrees forty-two minutes West (N 28° 42' W) for a distance of one hundred sixty and twenty three hundredths feet (160.23') to a stake at lands now or formerly of Ray Brinkerhoff; thence extending along lands now or formerly of Ray Brinkerhoff North seventy-three degrees eight minutes East (N 73° 08' E) for a distance of one hundred thirty-three and forty three hundredths feet (133.43') to a stake set on the westernmost dedicated right-of-way line of Colonial Road; thence extending in and along the westernmost dedicated right-of-way line of Colonial Road the following two (2) courses and distances, South twenty degrees forty-nine minutes East (S 20° 49' E) for a distance of seventy-seven and forty hundredths feet (77.40') to a stake; thence continuing South thirteen degrees eighteen minutes East (S 13° 18' E) for a distance of twenty-one and sixty one hundredths feet (21.61') to a stake on said right-of-way line of Lot No. 6, said stake marking the place of BEGINNING.

CONTAINING 15,581 square feet, and being designated Lot No. 7-B on a re-subdivision of Lot No. 7, Section A, Olde Colonial Village, prepared for Gary Dobrinoff by Richard F. Znn, Registered Surveyor, dated January 20, 1971 and recorded in the Dauphin County Recorder's Office in Plan Book K, Vol. 2 at Page 70.

SUBJECT nevertheless to restrictions in the prior conveyances.

BEING the same premises which Gary Dobrinoff, by his deed dated August 20, 1982, and recorded in the Office for the Recorder of Deeds in and for Dauphin County, Pennsylvania, in Deed Book 337, Page 204, granted and conveyed unto Helen G. Dobrinoff.

TOGETHER with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Helen G. Dobrinoff at and immediately before the time of her decease, in law, equity or otherwise howsoever, of, in, and to the same.

TO HAVE AND TO HOLD, the said lot or piece of ground above-described, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, her heirs and assigns, to and for the only proper use and behoof of the said Grantee, her heirs and assigns forever.

**THIS TRANSACTION IS EXEMPT FROM PENNSYLVANIA TRANSFER TAX AS IT IS A TRANSFER FOR NO ACTUAL CONSIDERATION BY AN EXECUTOR OF PROPERTY PASSED BY TESTATE TO A NAMED DEVISEE. 72 P.S. §8102-C.3.(7).**

AND the said Grantor, for himself and his respective heirs, executors and administrators, does covenant, promise and agree, to and with the said Grantee, his heirs and assigns, by these presents, that he, the said Grantee, and his heirs and assigns, that he, the said Grantor, have not heretofore done or committed any act, matter or thing whatsoever by the premises hereby granted, or any part thereof, is, are, shall or may be impeached, charged, or encumbered in title, charge, estate, or otherwise howsoever.

IN WITNESS WHEREOF, the said parties of the first part have hereunto set their hands and seals, the day and year first above-written.

WITNESS                                    The Estate of Helen G. Dobrinoff

_____                    _____ (SEAL)
                                           Gary L. Dobrinoff, Executor

COMMONWEALTH OF PENNSYLVANIA        }
                                    }  ss:
COUNTY OF _____         }

On this, the ____ day of June 2016, before me, a Notary Public, the undersigned officer, personally appeared **Gary L. Dobrinoff, Executor of the Estate of Helen G. Dobrinoff,** known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

I HEREBY CERTIFY, that the precise residence of the Grantee is:

3819 Lampost Lane
Camp Hill, PA 17011

_____
Attorney for Grantee

# EXHIBIT F

Parcel # 35-092-005-000-0000
       # 52-008-001-000-0000

Prepared by and return to:

Steven J. Schiffman, Esq.
Serratelli, Schiffman & Brown, P.C.
2080 Linglestown Rd.
Suite 201
Harrisburg, PA 17110

MORTGAGE

THIS MORTGAGE is made this *13* day of June, 2016, between the Mortgagor, Gary L. Dobrinoff whose addresses is 3819 Lamp Post Lane, Camp Hill, PA 17011, (herein referred to as "Mortgagor") and the Mortgagee, Dean R. Fuchs, Esquire as attorney for the Class (as defined below) (herein "Mortgagee") whose address is c/o Schulten Ward Turner & Weiss, LLP, 260 Peachtree Street, NW, Suite 2700 Atlanta, GA 30303.

WHEREAS, Mortgagor is a Defendant in a certain action in the US District Court for the Middle District of PA captioned Nashanda Watson, et al. v. Mr. G's Entertainment, Inc d/b/a Club 22, et al. Civil Action File NO. 1:13-CV-03049-JEJ (Action); and

WHEREAS, Mortgagor has agreed and Mortgagee, on behalf of all the Plaintiffs, (the "Class") and by a certain Settlement Agreement dated *June 13, 2016* (Agreement) approved by the Order of Court dated _____ (Order) the parties have agreed to secure the amounts owed and to be paid under the Agreement and Order, Three Hundred Fifty Thousand Dollars ($350,000.00) and as reflected in a certain Note to be secured by a mortgage on the within described property as an inducement to Mortgagee to settled the Action and to accept payments as set forth in the Agreement and Order. Mortgagee would not have agreed to the Agreement and Order without this additional security and has relied on this mortgage as consideration for the Agreement. Mortgagor acknowledges that Mortgagor has received valuable consideration for this mortgage;

TO SECURE to Mortgagee (a) the repayment of the indebtedness which is owed to Mortgagee, the payment of all other sums, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Mortgagor herein contained, and Mortgagor does hereby mortgage, grant and convey to Mortgagee the following described Properties located in the County of Dauphin, Commonwealth of Pennsylvania:

See Attached Exhibit "A" and "B"

which has the address of _____, Harrisburg, PA (Parcel # 35-092-005-000-0000)

and

38 Benevenue Road, Reed Township, PA (Parcel # 52-008-001-000-0000) (herein collectively "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water

rights, and water stock, and all fixtures now, or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property."

Mortgagor covenants that Mortgagor is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, that the Property is unencumbered, and that Mortgagor will warrant and defend generally the title to the Property against all claims and demands, subject to any declarations, easements or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Mortgagee's interest in the Property.

UNIFORM COVENANTS. Mortgagor and Mortgagee covenant and agree as follows:

1. **Payment of Principal.** Mortgagor shall promptly pay the principal the earlier of the sale of the Property or as provided in the Agreement and Order.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Mortgagee shall be applied by Mortgagee first in payment of amounts payable to Mortgagee by Mortgagor under paragraph 1.

3. **Charges; Liens.** Mortgagor shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Mortgagor making payment, when due, directly to the payee thereof. Mortgagor shall promptly furnish to Mortgagee all notices of amounts due under this paragraph, and in the event Mortgagor shall make payment directly, Mortgagor shall promptly furnish to Mortgagee receipts evidencing such payments. Mortgagor shall promptly discharge any lien which has priority over this Mortgage; provided, that Mortgagor shall not be required to discharge any such lien as long as Mortgagor shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Mortgagee, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

4. **Hazard Insurance.** Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Mortgagee may require and in such amounts and for such periods as Mortgagee may require; provided, that Mortgagee shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage.

The insurance carrier providing the insurance shall be chosen by Mortgagor subject to approval by Mortgagee; provided, that such approval shall not be unreasonably withheld. All premiums on insurance policies shall be paid in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Mortgagor making payment, when due, directly to the insurance carrier.

All insurance policies and renewals thereof shall be in form acceptable to Mortgagee and shall include a standard mortgage clause in favor of and in form acceptable to Mortgagee. Mortgagee shall have the right to hold the policies and renewals thereof, and Mortgagor shall promptly furnish to Mortgagee all renewal notices and all receipts of paid premiums. In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Mortgagee. Mortgagee may make proof of loss if not made promptly by Mortgagor.

Unless Mortgagee and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Mortgage is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Mortgage would be impaired, the insurance proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Mortgagor. If the

Property is abandoned by Mortgagor, or if Mortgagor fails to respond to Mortgagee within 30 days from the date notice is mailed by Mortgagee to Mortgagor that the insurance carrier offers to settle a claim for insurance benefits, Mortgagee is authorized to collect and apply the insurance proceeds at Mortgagee's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Mortgagee and Mortgagor otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the payments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. If under paragraph 16 hereof the Property is acquired by Mortgagee, all right, title and interest of Mortgagor in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Mortgagee to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

5. **Preservation and Maintenance of Property; Leaseholds.**  Mortgagor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold.

6. **Protection of Mortgagee's Security.**  If Mortgagor fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Mortgagee's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Mortgagee at Mortgagee's option, upon notice to Mortgagor, may make such appearances, disburse such sums and take such action as is necessary to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Mortgagee pursuant to this paragraph 6, with interest thereon, shall become additional indebtedness of Mortgagor secured by this Mortgage.  Unless Mortgagor and Mortgagee agree to other terms of payment, such amounts shall be payable upon notice from Mortgagee to Mortgagor requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law.  Nothing contained in this paragraph 6 shall require Mortgagee to incur any expense or take any action hereunder.

7. **Inspection.**  Mortgagee may make or cause to be made reasonable entries upon and inspections of the Property, provided that Mortgagee shall give Mortgagor notice prior to any such inspection specifying reasonable cause therefore related to Mortgagee's interest in the Property.

8. **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Mortgagee.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Mortgagor.  In the event of a partial taking of the Property, unless Mortgagor and Mortgagee otherwise agree in writing, there shall be applied to the sums secured by this Mortgage such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Mortgage immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Mortgagor.

If the Property is abandoned by Mortgagor, or if, after notice by Mortgagee to Mortgagor that the condemnor offers to make an award or settle a claim for damages, Mortgagor fails to respond to Mortgagee within 30 days after the date such notice is mailed, Mortgagee is authorized to collect and apply the proceeds, at Mortgagee's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Mortgagee and Mortgagor otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments.

9. **Mortgagor Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Mortgagee to any successor in interest of Mortgagor shall not operate to release, in any manner, the liability of the original Mortgagor and Mortgagor's successors in interest. Mortgagee shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Mortgagor and Mortgagor's successors in interest.

10. **Forbearance by Mortgagee Not a Waiver.** Any forbearance by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be a waiver of Mortgagee's right to accelerate the maturity of the indebtedness secured by this Mortgage.

11. **Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

12. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Mortgagee and Mortgagor, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Mortgagor shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

13. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor provided for in this Mortgage shall be given by mailing such notice by certified mail addressed to Mortgagor at the Property Address or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, and (b) any notice to Mortgagee shall be given by certified mail, return receipt requested, to Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee when given in the manner designated herein.

14. **Mortgagor's Copy.** Mortgagor shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

15. **Transfer of the Property; Assumption.** If all or any part of the Property or an interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Mortgagee may, at Mortgagee's option, declare all the sums secured by this Mortgage to be immediately due and payable. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request. If Mortgagee has waived the option to accelerate provided in this paragraph 15, and if Mortgagor's successor in interest has executed a written assumption agreement accepted in writing by Mortgagee, Mortgagee shall release Mortgagor from all obligations under this Mortgage and the Note.

If Mortgagee exercises such option to accelerate, Mortgagee shall mail Mortgagor notice of acceleration in accordance with paragraph 13 hereof. Such notice shall provide a period of not less than

30 days from the date the notice is mailed within which Mortgagor may pay the sums declared due.  If Mortgagor fails to pay such sums prior to the expiration of such period, Mortgagee may, without further notice or demand on Mortgagor, invoke any remedies permitted by paragraph 16 hereof.

NON-UNIFORM COVENANTS.  Mortgagor and Mortgagee further covenant and agree as follows:

16. **Acceleration; Remedies.**  Upon Mortgagor's breach of any covenant or agreement of Mortgagor in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Mortgagee prior to acceleration shall mail notice to Mortgagor as provided by applicable law specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Mortgagor to acceleration and foreclosure.  If the breach is not cured on or before the date specified in the notice, Mortgagee at Mortgagee's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding.  Mortgagee shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports.

17. **Assignment of Rents; Appointment of Receiver; Mortgagee in Possession.**  As additional security hereunder, Mortgagor hereby assigns to Mortgagee the rents of the Property, provided that Mortgagor shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.
Upon acceleration under paragraph 18 hereof or abandonment of the Property, Mortgagee, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due.  All rents collected by Mortgagee or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage.  Mortgagee and the receiver shall be liable to account only for those rents actually received,

18. **Release.**  Upon payment of all sums secured by this Mortgage, Mortgagee shall discharge this Mortgage, without charge to Mortgagor. Mortgagor shall pay all costs of recordation, if any.

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage.

WITNESS _____

By: _____
Gary L. Dobrinoff

COMMONWEALTH OF PENI@SYLVANIA,
                                    ss:
Dauphin County

      On this, the ___ day of June, 2016, before me, the undersigned officer, personally appeared Gary L. Dobrinoff, known to me (or satisfactorily proven) to be the person whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes herein contained.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My Commission expires:

Exhibit A

## DISCLOSURE FOR CONFESSION OF JUDGMENT

THE UNDERSIGNED IS EXECUTING, THIS ___ OF JUNE, 2016 A NOTE PAYABLE TO DEAN R. FUCHS, ESQUIRE AS ATTORNEY FOR THE CLASS IN CONNECTION WITH A LOAN IN THE AMOUNT OF $350,000 TO THE UNDERSIGNED FOR COMMERCIAL PURPOSES.

INITIALS: : _____  _____  _____

THE UNDERSIGNEDS' ATTORNEY HAS EXPLAINED TO THE UNDERSIGNED THAT THE NOTE CONTAINS WORDING THAT WOULD PERMIT DEAN R. FUCHS, ESQUIRE AS ATTORNEY FOR THE CLASS TO ENTER JUDGMENT AGAINST IT AFTER AN EVENT OF DEFAULT HAS OCCURRED, AT THE COURTHOUSE WITHOUT NOTICE TO THE UNDERSIGNED AND WITHOUT OFFERING THE UNDERSIGNED AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT AND THAT THE JUDGMENT MAY BE COLLECTED BY ANY LEGAL MEANS BY USE OF THE SHERIFF WHO MAY SEIZE PROPERTY, REAL AND PERSONAL.

INITIALS: _____  _____  _____

IN EXECUTING THE NOTE, THE UNDERSIGNED ARE KNOWINGLY, UNDERSTANDINGLY, AND VOLUNTARILY WAIVING THEIR RIGHT TO RESIST THE ENTRY OF JUDGMENT AGAINST THEM AT THE COURTHOUSE, AND IS CONSENTING TO THE CONFESSION OF JUDGMENT.

INITIALS: _____  _____  _____

THE UNDERSIGNED CERTIFIES THAT THE NOTE WAS EXECUTED BY THE UNDERSIGNED IN CONNECTION WITH A COMMERCIAL TRANSACTION AND DOES NOT INVOLVE A CONSUMER TRANSACTION.

THE INDIVIDUALS HAVE ANNUAL INCOME IN EXCESS OF $10,000.00

_____              _____
Witness                               Gary L. Dobrinoff,


_____              _____
Witness                               Christopher Danilshenko

Attest:                               Mr. G's Entertainment, Inc.

Secretary

By: _____
Gary L. Dobrinoff, President

# EXHIBIT G

# PROMISSORY NOTE

$350,000.00                                                                      June 1, 2016

      FOR VALUE RECEIVED, Gary L. Dobrinoff and Mr. G's Entertainment, Inc.,, (referred to as the "Maker") promises to pay to the order of Dean R. Fuchs, Esquire as attorney for the Class (as defined below) whose address is c/o Schulten Ward Turner & Weiss, LLP, 260 Peachtree Street, NW, Suite 2700 Atlanta, GA 30303. (the "Payee"), in lawful money of the United States of America and in immediately available funds, the principal sum of Three Hundred Fifty Thousand Dollars ($350,000.00), on the terms and conditions contained herein.

    1.   <u>Payment of Principal and Interest</u>.  Payments shall be made in accordance with a certain Settlement Agreement (Agreement) dated _June 13, 2016_ in a certain action in the US District Court for the Middle District of PA captioned Nashanda Watson, et al. v. Mr. G's Entertainment, Inc d/b/a Club 22, et al. Civil Action File NO. 1:13-CV-03049-JEJ (Action).  Said Settlement Agreement having been approved by Order of court dated _____, 2016.

    2.   <u>Rate of Interest</u>.  The outstanding principal balance under this Note shall not bear interest unless a Default has occurred, as defined in the Agreement.  Should a default occur and collection action is commenced all sums owed shall bear interest at Six percent (6%) from the date of this note until paid.  The interest rate provided in this Note shall apply to the indebtedness evidenced by this Note before, on and after the date or dates on which Payee enters judgment on this Note.

    3.   <u>Maximum Legal Rate</u>.  The Maker shall not be obligated to pay and the Payee shall not collect interest at a rate in excess of the maximum permitted by law or the maximum that will not subject the Payee to any civil or criminal penalties.  If, because of the acceleration of maturity, the payment of interest in advance or any other reason, the Maker is required to pay interest at a rate in excess of such maximum rate, the rate of interest under such provisions shall immediately and automatically be reduced to such maximum rate, and any payment made in excess of such maximum rate, together with interest thereon at the rate provided herein from the date of such payment, shall be immediately and automatically applied to the reduction of the unpaid principal balance of this Note as of the date on which such excess payment was made.  If the amount to be so applied to reduction of the unpaid principal balance exceeds the unpaid principal balance, the amount of such excess shall be refunded by the Payee to the Maker.

    4.   <u>Interest Computation</u>.  Interest shall be computed on the basis of a 365-day year.

    5.   <u>Late Charges</u>.  The Maker shall pay to the Payee a late charge imposed by the Payee for any payment of principal and/or interest received by the Payee more than ten (10) days after the same shall have been due in an amount equal five percent (5%) of any overdue amount.

    6.   <u>Application of Payments</u>.  All payments shall be applied first to payment in full of any costs incurred in the collection of any sum due under this Note, including (without limitation) reasonable attorneys' fees, then to the payment in full of any late charges, then to the

payment in full of accrued, unpaid interest and finally to the reduction of the unpaid principal balance of this Note.

7.    Prepayment.  This Note may be prepaid in whole at any time or in part from time to time without premium or penalty, provided that any such prepayment must be accompanied by payment of interest accrued on the amount prepaid.

8.    Default.  Any of the following shall be an "Event of Default" hereunder:

(a)    The Maker fails to make payment of the principal and interest when due and such failure continues for a period of ten (10) days after the Maker receives written notice thereof from Payee; or

(b)    The Maker fails to make payment of any other charge due the Payee or the Maker otherwise defaults hereunder; or

(c)    A decree or order for relief is entered by a court having jurisdiction over the property of the Maker in an involuntary case under the federal bankruptcy laws, as now or hereafter constituted, or under any other applicable federal or state bankruptcy, insolvency or other similar law, or a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of the Maker or for any substantial part of its property is appointed, or the winding-up or liquidation of its affairs is ordered and any such decree or order continues unstayed and in effect for a period of sixty (60) consecutive days, or the Maker commences a voluntary case under the federal bankruptcy laws, as now constituted or hereafter amended, or under any other applicable federal or state bankruptcy, insolvency or other similar law, or the Maker consents to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of the Maker or for any substantial part of its property, or the Maker makes any assignment for the benefit of creditors or takes any actions to dissolve or liquidate its business, or the Maker fails generally to pay its debts as they become due.

9.    Rights, Remedies.  Upon the occurrence of an Event of Default, and so long as the default shall continue unwaived by the Payee:

(a)    The Payee may at its option, declare all amounts due under this Note immediately due and payable and the Payee may exercise any of its rights and remedies set forth at law or in equity.

THE FOLLOWING PARAGRAPH SETS FORTH A WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE MAKER.  IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE MAKER, THE MAKER HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND, ON THE ADVICE OF SEPARATE COUNSEL OF THE MAKER, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS THE MAKER HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA.

(b)    The Maker authorizes and empowers the Prothonotary or any attorney of any court of record of Pennsylvania or elsewhere to appear for and enter judgment against it for the then unpaid principal amount of this Note, together with all accrued, unpaid interest and late

<u>charges, costs of suit and reasonable attorneys' fees, with or without declaration or stay of execution, and with release of errors, for which this Note or a copy hereof shall serve as a sufficient warrant. This power to enter judgment against the Maker shall not be exhausted by any exercise of the power and shall continue from time to time and at all times until full payment of all amounts due under this Note.</u>

      (c)    The remedies of the Payee shall be cumulative and concurrent, and may be pursued singly, successively, or together, at its sole discretion, and may be exercised as often as the occasion therefore shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of any future Event of Default.

      10.   <u>Security</u>.  This Note is secured, and payment hereof is assured, by, among other things, a mortgage of even date hereof.

      11.   <u>Joint and Several Obligation</u>.  All references herein to the "Maker" shall be deemed to refer to each and every person defined herein as the "Maker" individually, and to all of them, collectively, jointly and severally, as though each were named whenever the term "Maker" is used, and this Note shall be a joint and several obligation of all of them.

      12.   <u>Waivers</u>.  Except as otherwise set forth in Section 8(a) above, the Maker and all endorsers and guarantors of, and sureties for, this Note waive presentment for payment, demand, notice of dishonor, protest, and notice of protest with regard to this Note, all errors, defects and imperfections in any proceedings instituted by Payee under the terms of this Note, and all benefit that might accrue to the Maker by virtue of any present or future laws exempting any property, real or personal, or any part of the proceeds arising from any sale of any such property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment; and the Maker agrees that any real estate that may be levied upon pursuant to a judgment obtained by virtue hereof, on any writ of execution issued thereon, may be sold upon any such writ in whole or in part in any order desired by Payee.

      13.   <u>Unconditional Liability</u>.  The Maker and all endorsers, sureties and guarantors hereby jointly and severally waive all notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, and they agree that the liability of each of them shall be unconditional, without regard to the liability of any other party, and shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by the Payee, and consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Payee with respect to the payment or other provisions of this Note, and to the release any part of any collateral, with or without substitution, and agree that additional makers, endorsers, guarantors, or sureties may become parties hereto without notice to them or affecting their liability hereunder.

      14.   <u>Construction</u>.  This Note shall be construed and enforced in accordance with the domestic, internal law, but not the law of conflict of laws, of the Commonwealth of Pennsylvania.

      15.   <u>Severability</u>.  Any provision contained in this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any

such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

16.    <u>Miscellaneous</u>.

(a)    All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("Notices") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including electronic mail.  Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving Notices.  Regardless of the manner in which provided, Notices may be sent to a party's address as set forth in Section 6 h. of the Agreement or to such other address as any party may give to the other for such purpose in accordance with this Section.

(b)    No modification, amendment or waiver of, or consent to any departure by Maker from, any provision of this Note will be effective unless made in a writing signed by Payee, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

(c)    This Note shall bind Maker and its successors and assigns, and the benefits hereof shall inure to the benefit of Payee and their heirs, executors, administrators and assigns.

17.    <u>Class</u>.

Dean R. Fuchs, Esquire as attorney for the Plaintiffs' in the above described action shall have  absolute right to enforce the terms of the Agreement and this Note on behalf of the Plaintiffs entitled to payment under the Agreement, Order and this Note.  All persons entitled to recover under the Agreement and Order are referred to herein and in the Mortgage as the "Class".

IN WITNESS WHEREOF, the Maker, intending to be legally bound hereby, has caused this Note to be duly executed by its authorized officer the day and year first above written.

_____               _____
Witness                                Gary L. Dobrinoff,

Attest:                              Mr. G's Entertainment, Inc.

By: _____
Secretary                            Gary L. Dobrinoff, President

# EXHIBIT H

| NAME | Share of Net Settlement | Payment 1 | Payment 2 | Payment 3 |
|------|------------------------:|----------:|----------:|----------:|
| Blackwell-Young, Talya | $12,121.42 | $ 3,373.81 | $ 1,445.34 | $7,302.28 |
| Carter, Jacqulene | $9,245.04 | $ 2,415.01 | $ 1,034.59 | $5,795.43 |
| Watson, Nashanda | $15,282.57 | $ 4,427.52 | $ 1,896.75 | $8,958.29 |
| Harr, Alexis | $29,033.72 | $ 9,011.24 | $ 3,860.41 | $16,162.06 |
| Colbert, Kai'Isha | $7,821.76 | $ 2,607.25 | $ 1,116.95 | $4,097.56 |
| Woods, Shakira | $17,301.58 | $ 5,767.19 | $ 2,470.67 | $9,063.72 |
| Cox, Bre'Ana | $0.00 | $ - | $ - | $0.00 |
| Mitchell, Shilah | $1,627.43 | 542.48 | 232.40 | $852.56 |
| Rogers, Shanae | $8,099.30 | 2,699.77 | 1,156.58 | $4,242.95 |
| Duvall, Audriana | $2,301.47 | 767.16 | 328.65 | $1,205.66 |
| O'Donnell, Jessica Lynn | $0.00 | $ - | $ - | $0.00 |
| Fehr, Jill Amy | $1,983.91 | 661.30 | 283.30 | $1,039.31 |
| Robinson, Tavia | $2,092.41 | 697.47 | 298.80 | $1,096.14 |
| Stillman, Grace Anne | $4,339.81 | 1,446.60 | 619.73 | $2,273.48 |
| Kulp, Heather Lynn | $0.00 | $ - | $ - | $0.00 |
| Batdorf, Amanda | $15,344.34 | 5,114.78 | 2,191.17 | $8,038.39 |
| Warfel, Kelly | $1,589.58 | 529.86 | 226.99 | $832.73 |
| Caudill, Ashley Ann | $14,490.07 | 4,830.02 | 2,069.18 | $7,590.87 |
| Day, Brianne Nicole | $11,550.61 | 3,850.20 | 1,649.43 | $6,050.98 |
| Lamp, Danielle | $18,296.42 | 6,098.81 | 2,612.73 | $9,584.88 |
| Oren, Destinee | $8,834.62 | 2,944.87 | 1,261.58 | $4,628.16 |
| Hunter, Sydney | $0.00 | $ - | $ - | $0.00 |
| Seilhammer, Megan | $148.69 | 49.56 | 21.23 | $77.89 |
| Burtner, Michelle | $0.00 | $ - | $ - | $0.00 |
| Travers, Brittany | $3,138.61 | 1,046.20 | 448.19 | $1,644.22 |
| Burdett, Riley | $18,166.66 | 6,055.55 | 2,594.20 | $9,516.91 |
| | $202,810.00 | $ 67,603.33 | $ 28,969.58 | $106,237.08 |